Case numbers 23-5939 and 23-5948 James DeLanis v. Metro Govt of Nashville et al. Oral argument to be 10 minutes for each appellant and 20 minutes for the appellee. Ms. Brussel for the appellant. Good morning. There you are. This is going to take a minute. We had a tall fellow left. May it please the court. My name is Allison Bussel on behalf of Bob Mendez individually. I have reserved two minutes for rebuttal. This court should reverse the trial court's denial of qualified immunity to former council member Bob Mendez on plaintiff's First Amendment retaliation claim. Given the abbreviated time, I plan to limit my prepared remarks to issue two in our brief that the trial court drew an improper inference. The trial court took defendant Bob Mendez's own First Amendment protected public advocacy and inferred from it nefarious intent, which Twombly flatly prohibits. First, it's worth noting that appellee DeLanis did not even respond to the argument about an improper inference. Regardless, the trial court aired. Help me out. I want to make sure I'm getting because this is your main argument. So it's not I'm not sure why it's not resonating with me. I just want to make sure I've got this straight. You know, in the rule 26 context, they just got to give notice and lay out a claim and the inferences go in their favor. So wasn't wasn't the judge right to think that way about it? Proper properly drawn inferences go in their favor. But why why with all the facts was this improper inference? I mean, there will be if if you lose this, there'll be discovery and then the discovery allows you to say, well, that that's just completely unfair. Given these phone calls and this testimony. But what's the unfair inference from the complaint? Sure. So there are two problems with the methodology that the trial court used. First, under Twombly, where there is a plausible, lawful explanation for what is alleged, the court cannot just assume the plaintiff's nefarious narrative is true. That's straight out of Twombly. And just as in Twombly, what is actually that you can, if it's plausible? Well, what the court says in Twombly is that it isn't plausible where there is. Right. I mean, they, you know, Martians on the moon, they they give examples of very strange things. But why is this implausible? This seemed like an intense power battle. And yes, I can imagine threats being made. And respectfully, Your Honor, intense power battles in the political realm are perfectly normal and plausible. And they standing alone do not suggest nefarious intent. For example, paragraph. The word nefarious is is gilding things a little bit. It doesn't have to be nefarious. It just has to be retaliation. You know, adverse actions premised on free speech. Correct. And they don't have to call that nefarious. I mean, you might not think it's good, but that doesn't have to be nefarious to have a cognizable claim. But the nefarious what what would seem to be nefarious, according to the trial court, was precisely the narrative on which the trial court drew the inference. And the problem with that is Bob Mendez was exercising his own public advocacy as a council member. That I do agree with. I find that very strange about this case. Not just speaking very forcefully about what ought to happen. And suddenly one side is being charged with free speech violations. I hear you there. Right. And not only not only troubling from a First Amendment perspective, but it's also perfectly logical that he would be speaking out about this. And notably, he wasn't the only one speaking out about it. Right. I mean, there was active litigation about it with multiple lawyers making arguments. The complaint alleges that this was the Metro Nashville's policy. In fact, I mean, I guess one difference would be that Delanis spoke very forcefully, exercised his free speech rights. He never he never tried to make sure Mendez lost his job or that, you know, or was paid less or did some kind of adverse action as to Mendez. Isn't that right? I mean, because that's right. And respectfully, Your Honor, the complaint also doesn't allege that Bob Mendez did those things. All the complaint alleges this is key because there's a gulf between what is actually alleged and the narrative that the trial court put forth, which is precisely why Mr. Delanis focuses continuously on alleging that we've misconstrued the facts, because that narrative is key. What is actually alleged is place calls to Baker Donald's. Absolutely not, Your Honor. And that is not what is alleged. All that is alleged is that someone from Metro Nashville and Metro schools contacted Baker Donaldson and threatened to pull business. Paragraph one thirty six of the complaint explicitly acknowledges that Delanis does not know who did that. Despite that, and despite there being no other allegations of any connection between Bob Mendez and Baker Donaldson law firm, not a single allegation connecting him to that firm. Despite that, find out from the other side that I thought Mendez is referenced on this point, but keep going. He is referenced, but only because the plaintiff is assuming it could be him. Right. But plaintiff plainly acknowledges that that he does not know who made those calls. So the court is inferring that it could be Mendez just because Mendez openly advocated. And again, not the only one doing that. It could have been one of thousands of other Metro. Isn't that where the word plausibility comes in? It's just an improper inference. And I would certainly refer the court again to a plausible entrance. It is not a plausible inference in the absence of an allegation that renders it plausible. And I would liken it to a Fourth Amendment case where you have multiple officers. Why isn't it plausible if we know someone from the city made this threat? We know Mendez is the most engaged person on this topic. Why wouldn't why isn't that plausible that he's the one that engineered it, whether he made the call or he asked someone else to make the call? I would submit that the complaint does not support the finding that he was the most engaged person. The complaint says there's active litigation about it. The complaint says Metro's policy is to keep this referendum off of a ballot. And then it also says Bob Mendez, the chair of the Budget and Finance Committee, who is concerned, obviously, about the fiscal affairs of the city, who also proposed the tax referendum. And that's paragraph 32 of the complaint, paragraphs 40 through 43, 50, 74 and 75. They explain what Bob Mendez is like, what his actual job is. Right. His job is to propose tax increases. So he is he is involved in the underlying situation. I know this isn't a satisfying response, but I still want to say it and just see what you think about it. You know, if Mendez had nothing to do with this, that becomes very clear in discovery. That's just one deposition. And he says, I don't know what they're talking about. I've never made a call to Baker Donaldson. I don't know anyone at Baker Donaldson. I was just very upset about whether we have a tax increase or not. And that's why I said all those things. It's a completely unfair thing to say. And then no one else says Mendez did it. Case over. Your deposition. Qualified immunity exists for a reason. And the Supreme Court has been abundantly clear that possibilities. Maybe it's possible that it was Bob. It's possible it was any other metro official who was part of that policy. It's possible it was a lawyer advocating for for either side of these issues. Possibilities don't suffice to get you across the Twombly line. And particularly in the context of qualified immunity, where the purpose is to protect one from the burdens, not just liability, but from the burdens of suit itself. The court has to serve as as a barrier between those things. And well pleaded facts must permit the court to infer more than the mere possibility of misconduct. And with no connection between Bob Bendez and Baker Donaldson, and with only the only thing being alleged, his own First Amendment protected advocacy, that's an improper inference. And I have run out of time. All right. Well, we'll see what the other side has to say about this. But thank you. And now we'll hear from Baker Donaldson. So thank you. Good morning. Good morning. May it please the court, my name is Bob Boston. I'm from Nashville. And along with Michael Catone, I represent the appellant, Baker Donaldson. I'm going to address, with court's permission, two points to supplement what we've set out in our main brief and our reply brief. I've asked for two minutes for rebuttal. The first point that I will raise is this. We are asking the court to go back and reverse the district court and find that qualified immunity does apply to a law firm, just like it does an independent lawyer. Judge Richardson determined in a very short portion of his opinion that the whole issue of qualified immunity simply didn't apply to a law firm. Your case, the court's case, in Cullivan v. Abramson, seems to say directly opposite. It has been two different places in that opinion, which was a lawsuit based on a First Amendment retaliation claim. The law firm was sued. Three lawyers were sued. Two different places in the opinion, the court said the qualified immunity does apply to a law firm. If it doesn't apply to a law firm, then my client's argument before you is over, because 1983, we wouldn't have it. The normal rule under 1983 and under qualified immunity is that it applies to individuals, and in some cases, it can be stretched. But here, Cullivan set the stage in the Sixth Circuit to say qualified immunity does apply to a law firm. Well, it's not so much whether it applies to a law firm. It's a matter of whether the factual circumstances permit the law firm to take advantage of qualified immunity in the context of the case we have before us. So just saying it's a law firm is not the end of the inquiry. Judge Clay, I would agree with your point. In this case, the complaint alleges Baker, the law firm, was the entity that committed the infraction, the alleged violation of First Amendment rights for retaliation. There's not a separate allegation that an individual lawyer did anything right, wrong, or indifferent. The allegation is against the law firm. But what do you say about this later case? So I think you described Cullivan correctly, and I think the U.S. Supreme Court's Filarski opinion supports that approach. But we do have this case, Nugent v. Spectrum Juvenile, that, quote, is qualified immunity is unavailable to a private entity acting in a governmental capacity. So what was going on there? I mean, if you don't know the case, don't worry about it. It's called Nugent? Yes. Okay. Yes. I'm not familiar with the specific question you're asking. Here's the quote. It seems to defeat what you're saying, and I think it supports Judge Clay's question. The quote is, Nugent says, qualified immunity is unavailable to a private entity, Baker Donaldson, customarily a private entity, acting in a governmental capacity. Yes. Okay, so what do we do with that case? Well, to react to the question specifically, the way I understand your Rule 32.1, Cullivan remains the law of the circuit unless it's overturned by an en banc decision. Right. That's never been done. I thought you would give a different answer, and I'm going to give it to you so the other side hears it. That's an irrelevant case. Yes. It had zero to do with qualified immunity. The phrase qualified immunity does not appear in the case, and it's Monell liability. That's all that's going on.  Well, thank you for the explanation, and I appreciate the assist. I was focused on two additional cases that the appellate did assign, one of those being the United Pet Supply case, the other one being the Cooper v. Parrish case. Those were two from the Sixth Circuit, both of which they relied on at the time to say that you don't get qualified immunity if you're an entity. Neither one of those cases do apply because they weren't en banc. They didn't challenge the ruling in Cullivan. The ruling in Cullivan, if your honors please, makes all the sense in the world in the context of qualified immunity. Judge Nelson opinion, which is a good start. Judge Nelson, Judge Seiler, and Judge Wiseman were on that one, and you can read the opinion and you can almost sense some of the stuff that Judge Wiseman may have put in if you've known him as well. But the case, the way the law firm works, when it comes in and it's hired by the government utility, government entity, it's going to provide the services through one or more individuals. It does that all the time. If the appellee's point was well taken, I posit this question to the panel and to them. What happens if Mr. Boston is a solo practitioner but I operate my legal business as an LLC for pension purposes or financing purposes or something like that? If I then am engaged by a governmental entity, am I precluded from making the qualified immunity argument because I choose a business model that's different and distinct from the work I'm doing? The whole concept of qualified immunity from a private lawyer standpoint is that I'm asked to assist the government in a place that the government needs my assistance. If that's the case, the fundamental portion of it doesn't matter if it's a law firm, a lawyer, two lawyers, four lawyers. The service I'm provided is consistent with a common law that qualified immunity developed. Thus, full circle on the point, is there a fundamentally sound basis under what we have here that allows the appellee to say the law firm should not get qualified immunity when I sue the law firm for being the entity that provided the service? We submit no, qualified immunity should apply to the entity. Let me ask you this about the qualified immunity issue. What the plaintiff is suing for is his contention that his employment was improperly terminated. He's bringing an employment termination issue here. Now, Baker Donaldson does not clearly act as Metro's agent in managing internal employment decisions at the law firm. In other words, you're not involved with employment decisions that would have impacted plaintiff's cause of action. Consequently, qualified immunity doesn't enter the picture here. Judge Clay, if I understand your question correctly, I would respond in this fashion. If my client's work or services is not tied to the role of the Metro government, then there is no 1983 action because I'm not a state actor. I'd be different in disdain. So I don't believe the plaintiff, the appellee, can have it both ways. I am either a state actor acting with and in concert with a government, or I'm not. And on your point, it implies that I'm not because I'm doing something distinct, independent, and otherwise, which wouldn't allow there to be a 1983 action at that point. Isn't the distinction whether the law firm is so intricately involved in the decision-making and the mission of the governmental entity that there's essentially no divide between the law firm and the government, as opposed to the law firm acting as the legal representative and providing legal services to the government, which would seem to be the case here, I would think, unless you can tell us something about the case I'm missing. I actually think it could be both. I think it could be as long as there is an association or tie between my work for Metro. It could be legally, it could be in counseling, it could be by us or otherwise. The allegation in the case from the appellee is that we were acting at the protest and for and as part of Metro's position. My time is over. Thank you. Get your rebuttal. We'll hear from the other side. Thank you. Good morning. Good morning, panel. My name is John Harris. I'm an attorney from Nashville, Tennessee. I represent James Delanis. Mr. Delanis is sitting in the front row with me today. This is a case, as the Court's aware, has been heavily briefed. There's actually two complete sets of briefing because there's a motion to dismiss for lack of jurisdiction that was filed. The motion panel heard it. They deferred it over to this panel. Then there's also the principal briefs. Let's go to the Mendez question, which is that the complaint really doesn't plausibly show Mr. Mendez called Baker Donaldson and therefore led to the firing of your client. What are the facts in the complaint that make that a plausible allegation? I think that's the inquiry that she's setting up. What's your response to that? Yes, Your Honor. I'd love to address that. As a matter of fact, it's taking me completely off my outline for this morning, but here's my response. That's a sign of a good argument. I want to hit on a couple of facts that lay the foundation for your question. You've got to tell us it's just the complaint, right? This is motion to dismiss. Right. What is in the complaint that permits the inference that Mr. Mendez called Baker Donaldson and threatened to pull business if they didn't fire Delanus? The complaint establishes a series of facts that support that inference that was made by the trial court. First, we have the allegation in the complaint that Mendez, as a Metro Council member, was the sponsor of the tax rate increase itself. It shows a vested interest that he had in this issue to start with. That seems good. Then, following that 34% tax rate increase, public citizens started a referendum petition to go on the ballot and roll that back. We've got all this. Okay. Keep going. A little faster. On May the 10th, the Election Commission, which is a state agency, they're not part of Metro government. We understand all of this. Okay. You establish one very important point. He's motivated. He is motivated. Next. The next thing, May the 10th, they put it on the docket. May the 13th, Mendez shows up as the only statewide elected official, was his own terminology, at an Election Commission meeting, and he attacks the commission for scheduling the referendum vote. Now, we're talking about a state agency's actions. He accuses them of engaging in pre-baked political theater, and he accuses them of engaging in a sham, and he makes a threat to them that they're not going to get away with it. Now, he's attacking a state agency, and this is on the video, but it's also quoted specifically in our complaint. The next move is, after May the 13th, his speech, May the 25th, all of a sudden, John Hicks, a representative of Baker, he's the managing partner, calls Delantis in and says, We've got a problem. We've got Metro government. It's a client of ours. They're threatening to pull business. Did Hicks say that Mendez called, or did Mr. Hicks just say the client is upset? Hicks did not name who called. We don't dispute that. Hicks never told Mr. Delantis who made that phone call. Okay. Then we move forward from that point, May 26th and 28th are two critical dates having to do with the conflicts issue that I can revert to shortly in Baker's case. Then we come to June the 24th. June the 24th is pivotal because on June the 22nd, the Chancery Court, trial court, blocked the scheduling of the referendum vote. Two days later, on June the 24th, two things happened. Hicks calls Delantis in again and says, You've got to stop the discussion that's going to take place tomorrow night on whether or not the election commission, the state agency, is going to appeal this decision. On the very same day, Mendez issues a letter on council stationary that he circulates to the council, to all the members of the election commission, and to the news media, in which he specifically attacks Delantis as engaging in pre-baked political circus this time. He also accuses Delantis of firing the election commission's private attorney, Bill Koch, who used to be the chief justice of the Tennessee Supreme Court, and replacing him with Jim Blumstein for the purpose of getting legal advice that suited his political agenda. Okay? Those are the facts that we have in the record, in the complaint, concerning Mendez's specific activities. I don't know if I've captured this correctly, and we just have to sort it out. It's just kind of a plausibility question. Very motivated, the most engaged person in this government entity. Baker Donaldson is a client, and we know someone from this entity called Baker Donaldson, either in his direction, or he did it. But we have to close that link, right? Yeah, one more fact. Two more facts. Delantis was then fired on June 29th, Tuesday, two business days after. On July 2nd, Senator Farrell Hale, who represents Davidson County, has a lunch meeting with Mayor John Cooper. Mayor Cooper consents, he agrees, that they were applying pressure, that Metro was applying pressure. He said the pressure did not come from my office. The only Metro official that he mentioned in that lunch discussion with Farrell Hale was Bob Mendez, as being too emotional and overreacting. It didn't say anything about his calling Baker Donaldson. No, and that's part of the problem, is at this point, because we've not had the benefit of discovery, what we do know is these defendants know who made that phone call. Judge Richardson acknowledges in his opinion. It's reasonably inferable that they know who made that phone call. And he also found that it was plausible under the applicable standards that you could take the facts that we do have about Mendez's own heightened involvement in the activities. I think we have the response on this. Let's shift to the Baker Donaldson argument. Okay. And Judge Clay's line of questioning. What I take Baker Donaldson to be saying is the firm was clearly acting in a governmental capacity under the allegations of the complaint, because the allegations of the complaint is Baker Donaldson was working for the city and in that capacity punishes Mr. Delanus's free speech rights. So you couldn't have a 1983 action against Baker Donaldson unless they were acting in a governmental capacity, right? I mean, that's a premise. Well, you can. In other words, it's not that they have to be a public entity. They just have to be doing a public function. Otherwise, you wouldn't have a 1983 action against them, right? They do have to have some connection. That's correct, Your Honor. And that's brought up in the – So the point your friend on the other side was making is if they have enough of a government connection to be sued under 1983, shouldn't there be symmetry that they get the normal benefits of being sued under 1983, which is qualified immunity? It doesn't mean they will satisfy qualified immunity, but why wouldn't you have symmetry there? I think that's what he's saying. I think that's what Mr. Boston is saying, and I've read the Culligan decision, and I think it's distinguishable from these facts and it reconciles with what Judge Richardson did at trial court. He just gave that one quick reference to the Nugent decision. Okay, so you want to talk about Nugent. That doesn't mention the phrase qualified immunity. No, it doesn't. Okay. I'm just acknowledging that's where he went. The only thing is that issue today is not even mentioned, and I've never heard of a qualified immunity opinion that didn't use the words qualified immunity. It's a Monell liability case, and it makes perfect sense in a Monell situation to treat a private firm differently, a private entity. But that's not the situation. This is the situation where you can bring the suit against 1983 because Baker Donaldson was performing a public function in its capacity as a law firm for the city, and if you can do that, then the qualified immunity travels with it, and that's all Culligan says. And more importantly, that's what Filarski says, the U.S. Supreme Court decision written by Chief Justice Roberts. So I don't know how to get around that. I think, Your Honor, that's a difficult situation that we're in, but there are reasons why, particularly at this stage since it invokes their interpretation of the facts, that it's not appropriate jurisdictionally at this point, and here's why. If you extend qualified immunity from the individual attorney, say you've got the attorney that's engaged to represent the HR department for a small municipality, and they do HR stuff, and then they're sued because their HR decisions were the civil rights violation, then if the staff attorney is indistinguishable at that point from the private attorney because they were engaged in the same governmental activities, here what makes this difference in fact bound, I mean, they can claim qualified immunity. I don't think they get to that point. Richardson says you don't get it because you're a corporate entity, and if the corporate government can't have it. That just can't be right. You have LLCs, and these cases use corporation as well. So that just can't be right. It can't be the corporate form. If you look at Filarski, it points out that government was so small in the 1800s, most of the time the government relied on private actors to serve warrants and do all these other government functions. And what happened is they got sued under the common law, and they had qualified immunity even though they were private actors. I mean, that's the whole, Filarski lays this all out. So it's very strange to think you look at anything other than whether you're doing a government function, you wouldn't ask is it a single individual, is this sole proprietorship, is it a partnership, is it an LLC, is it an income-paying corporation? No, it's a focus on the government function. It is a focus on the government function, Your Honor. And here's where at this stage of the proceedings qualified immunity can't be extended to Baker. They can ask for it. They could potentially, depending on the facts, make a claim for it at summary judgment. But at this stage, on a motion to dismiss, it's inappropriate because the facts have to be developed. And here are some of the facts. But what about clearly established? I mean, even at the motion to dismiss stage, I think you've got to find a case where a law firm was found liable. I mean, that's the clearly established law. The clearly established law. Just to make sure why I think this is quite hard. Yeah. The idea of law firms punishing their partners, counsels, associates because of their speech is not that extraordinary in a modern America in 2025. And that's because they also serve other clients and they're profit-making entities. So I'm really wondering where that case is that you can have a free speech retaliation claim by a lawyer against the firm because the lawyer speaks out publicly very much within his rights to do so, but the law firm is trying to make money and serve these other clients. I don't know that case that says you have a cognizable claim from lawyer against law firm on the free speech clause. I haven't seen that case. I think this is how we get to that answer, for your honor. If Baker, there's a fact question as to what is Baker's scope of representation. We allege in the complaint that although Hicks told us, told Delanis, that Baker represented Metro, there was no disclosure as to what that nature of representation was. What is alleged in the complaint, because Baker, I mean, Delanis was directly involved, is that whatever Baker's representation of Metro was, it had nothing to do with the tax referendum, the tax rate increase, the litigation over whether or not the referendum goes on the ballot. They didn't want to lose a client. I mean, it sounds a little selfish. They're a profit-making entity. I mean, let's just put aside it was a governmental client. Let's just say it's their biggest corporate client. It's Walmart, IBM or something. A lawyer speaking out, the big client says, hey, sorry, we're going to have to part ways. We cannot have you representing us at the same time one of your members is saying something that's very hurtful to our mission. That is not an unusual problem. It's not, but I think it's a delicate line for the law firms to navigate. Not under the First Amendment. It's a delicate, as a matter of ethics and reputation and all of that. But I don't understand how that's a First Amendment issue. What we came back to, and this was a matter really raised in Baker's reply brief on appeal, really for the first time that we saw it. I mean, the trial court didn't really deal with this very much at all. But the case that we're relying on, and we've not had a chance to brief this because we can't file replies to, serve replies to reply briefs, is Memphis, Tennessee, area local, postal workers union, AFL-CIO versus City of Memphis, 361 F3rd 898, a 2004 Sixth Circuit decision. And what that case says, and I think it's consistent with the general law in this area, is that the circuit holds private entities and actors, even if they're not engaged as a distinct state actor, liable under 1983 under three particular tests. The public function test, the situation where the private attorney is hired to do the HR work. This sounds like a state action case, like trying to tell you what's state action and what isn't. Is that what that case is doing? I think what this case does is it defines three specific categories of where a private entity like Baker could be a state actor. The second is state... But I think we all agree that this is state action. You haven't gotten a question from any of us that is suspicious about whether Baker Donaldson was engaged in state action. No, no, I agree. I mean, Baker's argument on the reply brief was we're not a state actor at all. No, they're making the point that if you have a 1983 claim against us, we get qualified immunity. If we're not a state actor, then you don't even have a 1983 claim. Right. That seems to me the complaint pretty fairly alleges that if they're outside counsel to the city and this whole dispute grows out of that outside counsel work, that sounds like Cullinan and Filarski. And that's where our complaint is, I think, very specific that Baker's engagement with Delantis had nothing to do with the scope of duties that Baker had in the attorney-client relationship with Metro. Baker may well have been, its motive may well have been to protect the cash flow of this other line of work that's out there. But what Baker was doing, they weren't HR, they weren't involved in the election commissions, they weren't involved in any of the operative facts on the First Amendment or the civil rights violations. They basically stepped in and said, we want to protect cash flow from this potential or existing client. And to do that, we're going to agree with them, we're going to conspire with them to pressure you, Mr. Delantis, to derail this appeal, to block it, to vote against it, to resign from the commission, yielding a deadlock, or you're going to have to resign from the law firm. And when Mr. Delantis refused to do that, two business days later, they fired him. Whatever happened, by the way, who won this power battle? The power battle? Did the tax increase go through? Yeah, the tax increase went, and matter of fact, another very large one just went through this year. Oh, boy. Unfortunately. All right, there we go. I think we understand your argument. Thank you very much. Okay. We'll hear rebuttal unless you had something you really wanted to make clear. I've got some additional topics, but I think they're adequately briefed and I can't cover them in the two minutes, so rather than try, I'm going to, unless the court has some other questions. I don't think so. Thank you very much. We appreciate it. Thank you for answering the questions. Thank you. All right, we have two minutes of rebuttal, I think, for each of you. Thank you. I'd like to return to Your Honor's question to my friend about what allegations in the complaint actually connect any of this to Bob Mendez. What connects Bob Mendez to Baker Donaldson? What connects Bob Mendez to this alleged threat to pull business? And I just want to clarify, it's really important to read the allegations in the complaint because they're so different than the narrative that has flowed out of this case, that the complaint does not allege an ultimatum. That does not exist in the complaint. What's your best case? I think you've raised a really interesting argument. It's challenging to me as I'm sitting up here. What's your best case that this is on your side of the plausibility line? So our best cases are Iqbal and Twombly. Candidly, Your Honor, we would submit that they really do squarely address this because of this concept of inferring something nefarious from conduct that is plausible, logical, and lawful. Like where there are obvious lawful alternatives, you can't just assume the plaintiff's nefarious narrative is true. And that's exactly what the trial court did. So, for example, in Twombly, where you've got this claim that is based solely on parallel conduct, that standing alone is not unlawful. Bob Mendez is the budget and finance chair. Of course he cares that the tax increase that has already been adopted by the city is going to be completely eviscerated through a public vote. Your argument that ultimately the plaintiff would have been terminated even if Mr. Mendez did not exist and was not involved in any way in the issue that was a matter of controversy, I mean, the import of what you're saying is that the employment would have been undisturbed even if Mr. Mendez was not an actor here would be the ultimate conclusion to be drawn from the argument you're making. No, Your Honor, what we're saying is that there's just simply no connection alleged in the complaint between Baker Donaldson's decision to terminate, right? But you're contending that the allegations are not expressed sufficiently to even support the contention that the allegations could be proven by circumstantial evidence. I'm not following you in terms of that implication of your argument. Can I restate his point? Sure. It resonates with me. If you take Mr. Mendez out of this whole story, it sure looks pretty unlikely that Mr. Delanus is going to be fired. That seems reasonable to me to assume that. Well, I don't have any idea based on the complaint. What I do know is that to bust open the doors of discovery for someone who has asserted qualified immunity, you have to connect them to the allegations. And basically all the plaintiff has alleged here is that Bob Mendez was on the scene. It's kind of like a police officer who uses excessive force and you have five there. And this court has said repeatedly and the Supreme Court has said repeatedly like being on the scene is not enough. And not only is he on the scene, but he's advocating out of his own First Amendment protected speech. He's a council member. Of course he's advocating for that. Okay. Thank you very much. Thank you. I appreciate your argument. Mr. Boston. I'll be brief as two minutes was not brief. The issue that my client is faced with is the horns of a dilemma. We are faced with an ethical situation with one of our lawyers and a client that is opposed to that situation. We either act or we don't act. I thought the complaint alleged that there was not a conflict. Well, no it doesn't. I disagree. It's a motion to dismiss. Don't we have to accept this that there was not a conflict of interest? I believe the complaint at multiple places in four or five different paragraphs does allege facts that create the conflict, that expose the conflict. It says Metro was adverse to the election commission. That's a conflict right there. In addition, Rule 1.7 of the Tennessee disciplinary rules provides that if you have a concurrent interest involved, that can create a conflict too. A concurrent interest is if the alleged actor, Mr. Delanus, has a personal interest or he or she owes some type of duty to another person. He's on the election commission. That's the other person. So you're saying the problem was an ethical problem instead of a problem of the law firm's business interest? It could be, if Your Honor please, but not here. And the reason why is Rule 1.7 is mandatory. It says if it's imputed to my client because of what Mr. Delanus did or did not, we don't have an option. We're bound by it as well. What is your argument? Is it that it was an ethical problem or it was something that you were motivated by your business interest? Or are you saying it was both? That's a great point, Judge Clay. I'm not trying to put any words in your mouth. I'm really asking you, which is it? It could be both. Yeah, but what you contended was? My client contends it was an ethical issue on it. The final point I would raise with the panel is this, and it follows up on one of Judge Sutton's questions. There is not in the Sixth Circuit a clearly defined expression of the constitutional interest that my client, at the time it made the decision to end Mr. Delanus' employment, would know would be violating his constitutional rights. It's not there. The law says it's supposed to be published. It's supposed to be promulgated. It's supposed to be here. Your Honor hit the point. There is no such thing. If there is no such thing, how is my client on notice that what it did was somehow wrong? If it's not on notice because of that, then qualified immunity still applies. All right. Thank you very much to all three of you for your helpful briefs and arguments. It's a very tricky case, so it's wonderful to have excellent lawyers. Thank you very much. The case will be submitted.